# FOR PUBLICATION



**FILED**
Jan 27 2014, 6:55 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**DAVID BECSEY**
Zeigler Cohen & Koch
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**BRIAN REITZ**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| FRANK JACOBS, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A04-1304-CR-183 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Lisa Borges, Judge
The Honorable Anne Flannelly, Commissioner
Cause No. 49G04-1205-FB-31784

**January 27, 2014**

**OPINION - FOR PUBLICATION**

**MAY, Judge**

Frank Jacobs appeals his convictions of Class B felony criminal deviate conduct[1] and Class C felony criminal confinement.[2] He presents three issues for our review:

1. Whether the trial court abused its discretion when it excluded testimony regarding G.L.'s truthfulness;

2. Whether the trial court abused its discretion when it denied Jacobs' request to present his son, Justin, as a sur-rebuttal witness; and

3. Whether Jacobs' convictions subject him to double jeopardy.

We affirm in part, reverse in part, and remand.

## FACTS AND PROCEDURAL HISTORY

On May 11, 2012, Jacobs and G.L., a friend of Jacobs' son, were watching television and eating doughnuts at Jacobs' house. Jacobs left the room to put away the doughnut box, and when he returned, he laid across G.L.'s lap, much to G.L.'s surprise. Jacobs then committed oral sex on G.L. while holding G.L. down on the couch. When the act ended, Jacobs gave G.L. a pack of cigarettes and a five dollar bill and told G.L. not to tell anyone what happened.

G.L. told his mother, S.L., what happened and showed S.L. injuries to his penis. S.L. called the police, who also viewed G.L.'s injuries and heard G.L.'s accusations against Jacobs. The police arrested Jacobs. The State charged Jacobs with Class B felony criminal deviate conduct, Class C felony battery,[3] Class D felony criminal confinement, and Class A

---

[1] Ind. Code § 35-42-4-2(a).
[2] Ind. Code § 35-42-3-3(a).
[3] Ind. Code § 35-42-2-1(a)(3).

2

misdemeanor battery.[4] The criminal confinement charge was later changed to a Class C felony.[5]

During his bench trial, Jacobs attempted to elicit testimony during S.L.'s cross-examination regarding G.L.'s truthfulness. He also attempted to introduce Jacobs' son, Justin, as a previously undisclosed sur-rebuttal witness. The trial court sustained the State's objections during S.L.'s cross examination and denied Jacobs' request to present Justin as a sur-rebuttal witness, though Jacobs made an offer to prove. The trial court found Jacobs guilty of Class B felony criminal deviate conduct and Class C felony criminal confinement. It determined the Class A misdemeanor battery count was a lesser-included offense of Class C felony battery, but it did not enter a conviction on the battery count because of double jeopardy. The trial court sentenced Jacobs to ten years for Class B criminal deviate conduct and four years for Class C criminal confinement, to be served concurrently.

## DISCUSSION AND DECISION

1.    <u>Admissibility of Certain Testimony</u>

The scope and extent of cross-examination is within the discretion of the trial court and we will reverse only for an abuse of that discretion. *Manuel v. State*, 971 N.E.2d 1262, 1266 (Ind. Ct. App. 2012). We review rulings on the admissibility of evidence for an abuse of discretion. *Williams v. State*, 898 N.E.2d 400, 402 (Ind. Ct. App. 2008), *trans. denied*. "An abuse of discretion occurs when the decision is clearly against the logic and effect of the

---

[4] Ind. Code § 35-42-2-1(a)(1).
[5] Ind. Code § 35-42-3-3(b)(1).

3

facts and circumstances before the court." *Id.* We do not reweigh the evidence, but consider the evidence most favorable to the ruling and any uncontroverted evidence favorable to the defendant. *Id.*

a.    Testimony Regarding G.L's Truthfulness

Under Indiana Evidence Rule 103(a), "[e]rror may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected." During Jacobs' cross examination of G.L.'s mother, S.L., the following line of questioning occurred:

| | |
|---|---|
| [Defense]: | Okay. In terms of [G.L.], he had only been living with you since maybe November; is that right? |
| [S.L.]: | Of 2011, yes. |
| [Defense]: | Okay. So -- well, this happened in May of 2012, so he had only been living with you may be, [sic] I don't know, seven months? |
| [S.L.]: | Yeah. It's about right. |
| [Defense]: | So he had been living with his dad previously; is that right? |
| [S.L.]: | Yes. |
| [Defense]: | He came to live with you because there were some behavioral problems; is that right? |
| [State]: | I'm going to object to that question, Your Honor; relevance. |
| [Defense]: | Well, Judge, I do think it's relevant in terms of her dealings with [G.L.]. In terms of his honesty, I'd like to develop that. |
| [Court]: | Sustained. |
| [Defense]: | Okay. |
| [Defense]: | He had some behavioral issues; right? |
| [State]: | Objection, Your Honor. It was sustained. |
| [Court]: | Sustained. |
| [State]: | I asked her that question Mr. -- |
| [Defense]: | I should probably listen better, Judge. |
| [Defense]: | So [G.L.] was living with you. Had been living with his father; is that right? |
| [S.L.]: | Yes. |
| [Defense]: | Okay. In terms of [G.L.] living with you, was he going to school? |
| [S.L.]: | He was registered in school and I had to encourage him to go. |
| [Defense]: | Okay. But he wasn't going, was he. |
| [S.L.]: | Yeah. He was going some days. |

4

| [Defense]: | Some days. He wasn't going as much as he was supposed to? |
|---|---|
| [S.L.]: | No. |
| [Defense]: | Okay. Did he tell you he was going? |
| [State]: | Judge, I would object to that on relevance again. |
| [Court]: | Response? |
| [Defense]: | Judge, again, it goes toward his general honesty and how he (unintelligible) with his mom. |
| [Court]: | Sustained. |
| [Defense]: | Okay. |

* * * * *

| [Defense]: | Okay. Did you consider [G.L.] to be an honest person with you? |
|---|---|
| [S.L.]: | Yes, for the most part. I mean every -- |
| [Defense]: | What do you mean for the most part? |
| [S.L.]: | Teenagers lie. People lie, you know. |
| [Defense]: | Okay. |
| [S.L.]: | People tell the truth. |
| [Defense]: | So he lied to you at times; is that right? |
| [S.L.]: | I'm sure he has. |
| [Defense]: | Well you know of specific examples though; right? |
| [S.L.]: | I can't think of any right now. Did you eat your breakfast? No. You know, things like that. |
| [Defense]: | Okay. So you're saying he only lied about petty white lies? |
| [S.L.]: | I have no idea how many lies he's ever told me or anybody else. |
| [Defense]: | And I'm not really just getting into just, you know, the lies he's told you. I mean, in general, you know -- |
| [State]: | Judge, I'm going to object. I understand the reason for the questions and I've allowed some leeway, but I think we're going beyond what is permissible with this line of questioning. |
| [Court]: | Response? |
| [Defense]: | Judge, I think the honesty of an individual who's testifying especially the alleged victim in a situation like this, their credibility is the crux of the case. It's an absolute issue. |
| [Court]: | Sustained. |
| [Defense]: | And the only other response I'd say, Judge, is [I] did state specifically "for the most part". [sic] And I believe I should be able to develop that in terms of -- |
| [Court]: | I'm sustaining the objection. |

(Tr. at 83-85, 87-88.) Jacobs argues the trial court abused its discretion when it did not allow

him to ask S.L. questions regarding G.L.'s truthfulness, because his trial was "a credibility

5

contest, with G.L. on one side and Mr. Jacobs on the other." (Br. of Appellant at 8.) He claims, "[b]y limiting the testimony about G.L.'s character for untruthfulness or dishonesty the scales of justice were tipped unfairly in favor of the State." (*Id.*) We disagree.

Under Indiana Evidence Rule 404(a)(2), evidence of a pertinent character trait of the victim is admissible. Additionally, under Evid. R. 405, a party may present evidence of an admissible character trait through "testimony as to reputation or by testimony in form of an opinion[,]" Evid. R. 405(a), and, on cross examination, inquiry is allowed regarding "specific instances of conduct" when character is "an essential element of a . . . defense." Evid. R. 405(b). However, even if the trial court abused its discretion when sustaining the State's objection to Jacobs' questioning regarding G.L.'s propensity toward untruthfulness, the error is harmless. Other evidence, independent of G.L.'s testimony, proved Jacobs committed Class B felony criminal deviate conduct. S.L., Officer Donahue, and Williams all viewed G.L.'s injuries and corroborated G.L.'s testimony, and the bite marks on G.L.'s penis matched Jacobs' pattern of missing teeth. "The improper admission of evidence is harmless error when the reviewing court is satisfied that the conviction is supported by substantial independent evidence of guilt so that there is no substantial likelihood that the challenged evidence contributed to the conviction." *Meadows v. State*, 785 N.E.2d 1112, 1121 (Ind. Ct. App. 2003), *trans. denied*. Any error in sustaining the State's objection to Jacobs' questioning regarding G.L.'s character was harmless.

        b.     Justin Jacobs as Sur-Rebuttal Witness

Regarding the admission of testimony of late-disclosed witnesses, our Indiana

Supreme Court has held:

> While wide discretion is given to the trial court in such matters as the course of proceedings, exclusion of evidence, and violations, in making its decisions, the trial court must give substantial weight to a defendant's constitutional rights, here the right to compulsory process under the Sixth Amendment to the U.S. Constitution and Art. 1, § 13 of the Indiana Constitution. The U.S. Supreme Court has made clear that, depending on the circumstances, excluding a witness may be appropriate or it may be unconstitutional. *Taylor v. Illinois*, 484 U.S. 400, 407-16, 108 S.Ct. 646, 652-56, 98 L.Ed.2d 798, 809-15 (1988). Indiana jurisprudence recognizes a strong presumption to allow defense testimony, even of late-disclosed witnesses: "The most extreme sanction of witness exclusion should not be employed unless the defendant's breach has been purposeful or intentional or unless substantial and irreparable prejudice would result to the State." *Wiseheart v. State*, 491 N.E.2d 985, 991 (Ind. 1986).

*Vasquez v. State*, 868 N.E.2d 473, 476 (Ind. 2007).

When determining whether the trial court abused its discretion when it excluded the testimony of a late-disclosed witness,

> five factors may also be helpful in determining whether to exclude the testimony of witnesses: (i) when the parties first knew of the witness; (ii) the importance of the witness's testimony; (iii) the prejudice resulting to the opposing party; (iv) the appropriateness of lesser remedies such as continuances; and (v) whether the opposing party would be unduly surprised and prejudiced by the inclusion of the witness's testimony.

*Cook v. State*, 675 N.E.2d 687, 691 n. 5 (Ind. 1996). "With respect to rebuttal witnesses, nondisclosure is excused when that witness was unknown and unanticipated." *Beauchamp v. State*, 788 N.E.2d 881, 892 (Ind. Ct. App. 2003). Jacobs argues the trial court abused its discretion when it denied his request to present his son, Justin, who had not been previously disclosed as a witness, as a sur-rebuttal witness to rebut G.L.'s testimony regarding whether Justin was present in Jacobs' apartment during the crime. We disagree.

7

During Jacobs' direct and cross examinations, Jacobs denied he committed the crimes with which he was charged. He indicated that, on the night of the alleged crime, he, G.L., and Justin ate doughnuts, and then Jacobs fell asleep on the couch only to be awakened by G.L. stealing items from his house. On rebuttal, G.L. testified:

| | |
|---|---|
| [State]: | Okay, [G.L.]. Third time now; right? |
| [G.L.]: | Yes, ma'am. |
| [State]: | Okay. At the point when you and [Jacobs] returned back to his house after you got the doughnuts and the cigarettes, was anyone there in his house with you? |
| [G.L.]: | No, ma'am. |
| [State]: | Okay. How do you know that? |
| [G.L.]: | Because I could see there was nobody there. |
| [State]: | Okay. Did you ever see [Jacobs'] other son Justin come into the house and eat doughnuts with you guys? |
| [G.L.]: | No, ma'am. |

(Tr. at 167-68.) After G.L. testified, Jacobs attempted to introduce Justin as a sur-rebuttal witness:

| | |
|---|---|
| [Court]: | Any sur[-]rebuttal? |
| [Defense]: | If I may, Judge, just a moment. Judge, I'm going to call Justin [redacted]. |
| [State]: | Judge, I've never had any notice of this witness. I don't have any information about him. I haven't had an opportunity to run his criminal history. I understand that it's sur[-]rebuttal, however, the Defense knew the testimony the Defendant that [sic] was going to present and that it could involve this individual. He's never been listed as a witness in this case. |
| [Court]: | Response? |
| [Defense]: | Judge, I had no idea that [Mr. G.L.] -- or I had no idea [G.L.] was going to disagree that someone was there and that was not presented until rebuttal. It wasn't really a factual issue in this case as it didn't pertain to being there when the event occurred. Basically, it's a credibility issue with my client at this point that they're trying to say he's lying about inconsequential fact. So I think it's important. You want to put [G.L.] up and say no one was there; I was [sic] someone to say what they have to say. |

| | |
|---|---|
| [Court]: | All right.  Well, I believe that know [sic] that Mr. Jacobs -- once you knew he was going to testify, was going to testify that Justin and Mr. Jacobs['] sister was [sic] at the house during some period of time when the alleged victim was present that you could have anticipated that they could be potential witnesses and should have informed the State that they were potential witnesses that that [sic] was [sic] part of the defense.  So the Court does deny your calling Justin [redacted]. |
| [Defense]: | Okay.  Judge, could I just have a brief moment to make a record in that regard? |
| [Court]: | Yes, do you wish him to testify? |
| [Defense]: | I can do that.  But first of all I'd like to say I had no idea that Mr. Jacobs was going to make reference to that because it didn't pertain to the actual timing of this seeing G.L. in the living room.  So I didn't have any knowledge that it'd be relevant at the time.  So I didn't list him as a witness.  But I would like to call Justin in order to I suppose to make an offer to prove as to what he would say. |
| [Court]: | All right.  And the Court will also note that Justin was present throughout the entire court trial. . . . |

(*Id*. at 168-70.)  Jacobs' counsel indicated while Justin's testimony did not pertain to the time the crime was committed, Justin's testimony was presented because "it's a credibility issue with my client at this point that they're trying to say he's lying about inconsequential fact." (*Id*. at 169.)

However, like the admissibility of S.L.'s testimony, this error is harmless because there existed evidence independent of G.L.'s testimony to prove Jacobs committed Class B felony criminal deviate conduct.  "The improper admission of evidence is harmless error when the reviewing court is satisfied that the conviction is supported by substantial independent evidence of guilt so that there is no substantial likelihood that the challenged evidence contributed to the conviction." *Meadow*, 785 N.E.2d at 1121.  As noted above,

9

S.L., Officer Donahue, and Williams all viewed G.L.'s injuries and corroborated G.L.'s testimony, and the bite marks on G.L.'s penis matched Jacobs' pattern of missing teeth. Thus, any error in the exclusion of Justin as a witness was harmless.

2.    Double Jeopardy

Article 1, Section 14 of the Indiana Constitution provides that "no person shall be put in jeopardy twice for the same offense." Two or more offenses are the same if, "with respect to either the statutory elements of the challenged crimes or the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense." *Richardson v. State*, 717 N.E.2d 32, 49 (Ind. 1999). Double jeopardy may also be proven when there is a "reasonable probability that the evidentiary facts used by the fact finder to establish the essential elements of one offense may also have been used to establish the essential elements of the second offense." *Id*. at 53.

Jacobs argues his convictions of Class B felony criminal deviate conduct and Class C felony criminal confinement subjected him to double jeopardy because the force Jacobs used was the same to commit both criminal deviate conduct and criminal confinement. Our Indiana Supreme Court has held a person who "commits rape or criminal deviate conduct necessarily 'confines' the victim at least long enough to complete such a forcible crime." *Gates v. State*, 759 N.E.2d 631, 632 (Ind. 2001). Therefore, to determine whether a separate conviction of confinement subjects a defendant to double jeopardy, we must consider whether "the confinement exceed the bounds of the force used to commit the rape and criminal deviate conduct." *Id*.

10

The State concedes Jacobs' convictions violate double jeopardy, and we agree. Jacobs confined G.L. by lying on top of him while committing criminal deviate conduct, and G.L. testified after the act, Jacobs "just stopped and he just got off me." (Tr. at 33.) Therefore, Jacobs did not use more force than was necessary to commit criminal deviate conduct, and Jacobs' conviction of confinement based on the same force subjected him to double jeopardy.

**CONCLUSION**

Any errors that may have occurred when the trial court excluded S.L.'s testimony regarding G.L.'s truthfulness or the exclusion of Justin as a witness were harmless because there existed independent evidence of Jacobs' guilt. Therefore, we will not reverse Jacobs' convictions based on the trial court's decisions regarding the admissibility of S.L. or Justin's testimony. However, Jacobs' convictions of Class B criminal deviate conduct and Class C criminal confinement subjected him to double jeopardy, and we remand for the trial court to vacate his conviction of Class C felony criminal confinement.

Affirmed in part, reversed in part, and remanded.

BAILEY, J., and BRADFORD, J., concur.

11