## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**
Mar 19 2015, 9:26 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Michael R. Fisher
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Jodi Kathryn Stein
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Arturo Estrada-Medina,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

March 19, 2015

Court of Appeals Case No. 49A04-1409-CR-409

Appeal from the Marion Superior Court Criminal Division 4 Honorable Lisa Borges, Judge Cause No. 49G04-1305-FB-028012

**Friedlander, Judge.**

[1] Arturo Estrada-Medina appeals following his convictions of class B felony Rape[1] and class D felony Criminal Confinement.[2] He raises two issues on appeal, one of which we find dispositive: Do his convictions for rape and criminal confinement violate Indiana's constitutional double jeopardy protections?

[2] We reverse and remand with instructions.

[3] In the early evening hours of September 24, 2006, then-seventeen-year-old D.W. went to the Berkley Commons apartments in Indianapolis to visit her boyfriend, Derek Reynolds. When she arrived, Reynolds was with his friend "Red" and a Hispanic man D.W. did not know. The group hung out in a park by the apartment complex while Reynolds, Red, and the Hispanic man drank beer. At some point, Derek suggested that they all go to the apartments' laundry facility, where D.W. had previously hung out with Reynolds on several occasions. D.W. led the way to the basement of the building where the laundry room was located. When she got into the room and turned around, she discovered that she was alone with the Hispanic man. D.W. tried to leave, but

---

[1] Ind. Code Ann. § 35-42-4-1 (West, Westlaw 2013). Effective July 1, 2014, this offense has been reclassified as a Level 3 felony. *See* I.C. § 35-42-4-1 (West, Westlaw current with all legislation of the 2015 First Regular Session of the 119th General Assembly effective through February 23, 2015). Because the offense in this case was committed prior to that date, it retains its former classification as a class B felony.

[2] I.C. § 35-42-3-3 (West, Westlaw 2013). Effective July 1, 2014, the criminal confinement statute has been revised and the offense has been reclassified as a Level 6 felony, which may be elevated to a Level 5, 3, or 2 felony under certain circumstances. *See* I.C. § 35-42-3-3 (West, current with all legislation of the 2015 First Regular Session of the 119th General Assembly effective through February 23, 2015). Because the offense in this case was committed prior to that date, it retains its former classification as a class D felony.

the man blocked her way and grabbed her by the throat and squeezed. D.W. was scared and could not breathe. D.W. then ended up on the floor with the man on his knees between her legs. D.W. was crying and begging for him to let her go, and the man was telling her in Spanish to shut up. D.W. removed her pants and underwear because she "knew [she] wasn't leaving the laundry room unless [she] did something." *Transcript* at 130. The man then undressed and penetrated D.W.'s vagina with his penis while she continued to cry. After he ejaculated inside D.W.'s vagina, D.W. then grabbed her clothes and left the laundry room.

[4] D.W. put her clothes back on outside, and almost immediately thereafter ran into Reynolds and Red. D.W. told Reynolds that she had been raped, and he told her not to call the police because there was an active warrant for his arrest. Shortly thereafter, a friend of D.W.'s contacted Deborah Schonfeld, who ran a program for at-risk youth in which D.W. participated. Schonfeld sent her husband to pick up D.W. and bring her back to their house. Schonfeld spent time talking to D.W., who was shaking, extremely distressed, and having difficulty communicating. Eventually, D.W. agreed to report the incident. She was then interviewed by police and taken to the hospital, where a rape kit was completed. In February 2007, a DNA profile was developed from sperm fractions found during the rape kit exam and the profile was uploaded into Indiana's DNA database. No match was found at that time, and no arrests were made.

[5] Six years later, in April 2013, Indianapolis Metropolitan Police Detective David Miller was notified that there was a DNA match in the database with Estrada-Medina's profile, which had been recently uploaded due to a criminal trespass conviction. Detective Miller contacted D.W., who stated emphatically that she wished to pursue charges. Subsequently conducted DNA testing confirmed that Estrada-Medina was the source of the DNA found during D.W.'s rape kit.

[6] The State charged Estrada-Medina with class B felony rape, two counts of class D felony criminal confinement, and class D felony strangulation. A two-day jury trial commenced on July 14, 2014, at the conclusion of which Estrada-Medina was found guilty of rape and one count of criminal confinement and acquitted of the remaining charges. Estrada-Medina now appeals.

[7] Estrada-Medina argues that his convictions for rape and criminal confinement violate Indiana's constitutional double jeopardy protections. The double jeopardy clause found in article 1, section 14 of the Indiana Constitution "was intended to prevent the state from being able to proceed against a person twice for the same criminal transgression." *Richardson v. State*, 717 N.E.2d 32, 49 (Ind. 1999). Two or more offenses are the "same criminal transgression" for the purposes of the Indiana double jeopardy clause if, "with respect to either the statutory elements of the challenged crimes or the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense." *Id.*

[8] In this case, Estrada-Medina challenges his convictions under the actual-evidence test, which "prohibits multiple convictions if there is 'a reasonable possibility that the evidentiary facts used by the fact-finder to establish the essential elements of one offense may also have been used to establish the essential elements of a second challenged offense.'" *Davis v. State*, 770 N.E.2d 319, 323 (Ind. 2002) (quoting *Richardson v. State*, 717 N.E.2d at 53). Establishing a "'reasonable possibility' that the jury used the same facts to reach two convictions requires substantially more than a logical possibility." *Lee v. State*, 892 N.E.2d 1231, 1236 (Ind. 2008). Instead, the existence of a reasonable possibility "turns on a practical assessment of whether the jury may have latched on to exactly the same facts for both convictions." *Id.* In applying this test, we seek "to identify the essential elements of each of the challenged crimes and to evaluate the evidence from the jury's perspective, considering where relevant the jury instructions, argument of counsel, and other factors that may have guided the jury's determination." *Wright v. State*, 950 N.E.2d 365, 369 (Ind. Ct. App. 2011).

[9] On appeal, Estrada-Medina argues that his convictions violate double jeopardy principles because there is a reasonable possibility that the jury relied on the same conduct to support the criminal confinement conviction and to establish the force element of the rape conviction. "In addition to the instances covered by *Richardson*, 'we have long adhered to a series of rules of statutory construction and common law that are often described as double jeopardy, but are not governed by the constitutional test set forth in Richardson.'" *Guyton v.*

*State*, 771 N.E.2d 1141, 1143 (Ind. 2002) (quoting *Pierce v. State*, 761 N.E.2d 826, 830 (Ind. 2002)). One of these rules prohibits "[c]onviction and punishment for a crime which consists of the very same act as an element of another crime for which the defendant has been convicted and punished." *Id.* (quoting *Richardson v. State*, 717 N.E.2d at 56 (Sullivan, J., concurring)). Thus, if we determine that Estrada-Medina's criminal confinement conviction is based on the same act that establishes the force element of his rape conviction, a double jeopardy violation has occurred.

[10] "[A] person who 'commits rape or criminal deviate conduct necessarily confines the victim at least long enough to complete such a forcible crime.'" *Jacobs v. State*, 2 N.E.3d 116, 122-23 (Ind. Ct. App. 2014) (quoting *Gates v. State*, 759 N.E.2d 631, 632 (Ind. 2001)), *summarily aff'd in relevant part*, 22 N.E.3d 1286 (Ind. 2015). For criminal confinement to constitute a separate crime, there must be proof of force to effectuate the confinement that goes beyond that necessary to effectuate the rape. *See Ryle v. State*, 549 N.E.2d 81, 85 n.7 (Ind. Ct. App. 1990), *trans. denied*. For example, in *Sallee v. State*, rape and criminal confinement convictions did not violate double jeopardy protections when, as the victim gave the defendant and his co-defendant a ride, the defendant pulled her into the backseat and would not let her out of the car despite her pleas, and the two defendants then took her to their house, where they repeatedly raped her. 777 N.E.2d 1204 (Ind. Ct. App. 2002), *trans. denied*.

[11] On appeal, the State argues that the rape and criminal confinement convictions are supported by separate acts of force. Specifically, the State argues that the

criminal confinement was accomplished when Estrada-Medina made D.W. get on the ground, and "[t]he confinement necessary to effectuate the rape . . . was [Estrada-Medina's] act of physically touching D.W.'s body—by lying on her or next to her—in order to penetrate his penis into her vagina." *Appellee's Brief* at 10.

[12] Assuming *arguendo* that a factual distinction this fine could support separate convictions for rape and criminal confinement, we note that such distinction was not argued to the jury. The charging information presented to the jury alleged that Estrada-Medina committed rape by knowingly or intentionally having sexual intercourse with D.W., a member of the opposite sex, when D.W. was compelled by force or imminent threat of force. *See* I.C. § 35-42-4-1. The charging information for the relevant criminal confinement charge provided that Estrada-Medina committed the offense by "knowingly confin[ing] [D.W.] without the consent of [D.W.], by making [D.W.] get on the ground." *Appellant's Appendix* at 24; *see also* I.C. § 35-42-3-3 (West, Westlaw 2013) (providing that a person who "confines another person without the other person's consent" commits class D felony criminal confinement).[3] Thus,

_____

[3] The criminal confinement statute applicable at the time of these offenses provided that a defendant may commit class D felony criminal confinement in two distinct ways: either by "confin[ing] another person without the other person's consent" or by "remov[ing] another person, by fraud, enticement, force, or threat of force, from one (1) place to another". I.C. § 35-42-3-3 (West, Westlaw 2013); *see also State v. Greene*, 16 N.E.3d 416, 419-20 (Ind. 2014) (explaining that under the previously applicable statute, "[t]wo distinct types of criminal confinement are encompassed: confinement by non-consensual restraint and confinement by forcible removal"). In this case, Estrada-Medina was charged with two counts of criminal confinement. In Count II, he was charged with criminal confinement by forcible removal for dragging D.W. into the laundry room. In closing arguments, the State conceded that no evidence had been presented to support Count II and that the jury should acquit Estrada-Medina on that count, which it did. In Count III, Estrada-Medina was

although the charging information for criminal confinement specified the precise act supporting the charge, the charging information for rape contained no similar specificity. Instead, it was in substance merely a recitation of the relevant language of the rape statute. The jury instructions contained no specific assertions as to which acts were alleged to support the force element of the rape and which acts were alleged to support the criminal confinement charge. In closing arguments, the State argued that Estrada-Medina committed criminal confinement by forcing D.W. to get on the ground, but it made no attempt to differentiate the force supporting the criminal confinement conviction from the force used to accomplish the rape. Indeed, the State argued to the jury that "[h]e puts her on the ground and then he forces her to have sex. That's rape." *Transcript* at 325. This may well have been construed by the jury as an invitation to rely on precisely the same act establishing the criminal confinement conviction to establish the force element of rape. Although we note that D.W. testified to other acts that could, at least theoretically, have been relied upon to establish the force element of rape—e.g., that Estrada-Medina blocked her exit from the laundry room and grabbed her by the throat and

---

charged with criminal confinement by non-consensual restraint for making D.W. get on the ground, and he was convicted on this charge. We note, however, that with respect to Count III, the jury was instructed on the elements of criminal confinement by forcible removal, not non-consensual restraint. *See Appellant's Appendix* at 154 (instructing the jury that to support a conviction for criminal confinement as charged in Count III, the State must prove that Estrada-Medina "removed [D.W.] by force or threat of force from one place to another"). Because we reverse with instructions to vacate Estrada-Medina's criminal confinement conviction, we need not address any potential problems arising from this inconsistency. Regardless of whether Estrada-Medina was convicted of criminal confinement based on non-consensual restraint or forcible removal, the evidence relied upon to support the offense was the same—that is, that Estrada-Medina made D.W. get on the ground.

squeezed—the State did not present the evidence in a manner that eliminated the possibility that the jury would rely on the same evidence to establish both the criminal confinement and the force element of the rape. In other words, there is a reasonable possibility that the jury convicted Estrada-Medina of criminal confinement based on the very same act it relied upon to establish the force element of rape. Accordingly, the convictions violate double jeopardy protections, and we therefore remand with instructions to vacate the criminal confinement conviction. Because Estrada-Medina's convictions were ordered to be served concurrently, his aggregate sentence will not change.

[13] Judgment reversed and remanded with instructions.

Kirsch, J., and Crone, J., concur.