Carlton WRIGHT, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 10A01–1009–CR–517.

Court of Appeals of Indiana.

June 17, 2011.

Jeffrey D. Stonebraker, Jeffersonville, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Jodi Kathryn Stein, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BARTEAU, Senior Judge.

### STATEMENT OF THE CASE

Defendant–Appellant Carlton Wright appeals his convictions of robbery, a Class A felony, Indiana Code section 35–42–5–1 (1984), and criminal confinement, a Class D felony, Indiana Code section 35–42–3–3 (2006).[1] Wright also appeals his sentence. We affirm in part, reverse in part, and remand.

### ISSUES

Wright raises three issues, which we restate as:

I.     Whether there is sufficient evidence to support Wright's conviction for robbery.

II.    Whether Wright's convictions for robbery and criminal confinement violate his protection against double jeopardy under the Indiana Constitution.

III.   Whether Wright's sentence is inappropriate in light of the nature of the offense and the character of the offender.

### FACTS AND PROCEDURAL HISTORY

On December 24, 2009, Reinaldo Santiago encountered Wright and Kianna Ball at a motel in Clarksville, Indiana, while he was looking for friends. Santiago spoke very little English, but he agreed to give Wright and Ball a ride. They got into Santiago's van, and Santiago drove them to his house to retrieve his cell phone. Next, Santiago took them with him as he went to buy alcohol and withdraw money from an automatic teller machine, and then they returned to Santiago's home. At Santiago's home, Wright convinced Santiago to give him forty dollars in exchange for sex with Ball, but Santiago ultimately did not have sex with her.

Next, the three of them got back into Santiago's van, and Santiago drove to a friend's house to find someone to serve as a translator. Wright was in the front passenger seat, and Ball sat in the back seat. When Santiago arrived at his friend's house and parked the van, Ball produced a handgun and pointed it at Santiago's head. Wright grabbed Santiago and prevented him from moving. Next, Wright got out of the van and came around to Santiago's door. Ball shot Santiago in the head, and Wright pulled Santiago out of the van. Wright took Santiago's seat and drove off. Witnesses obtained medical assistance for Santiago. He survived the shooting after numerous surgeries, but he was rendered permanently blind.

Meanwhile, Officer John Grimm saw the van as it drove through several stop signs. Grimm tried to stop the van, but the driver evaded him. Soon after losing sight of the van, Grimm discovered it abandoned in an alley. The doors were open and the engine was still running. Shortly thereafter, a business's surveillance system recorded Wright and Ball as they walked together down a street. Next, Mary Orteze was in her apartment when she heard someone

---

1.  Wright does not appeal his conviction of resisting law enforcement, a Class A misdemeanor. Ind.Code § 35–44–3–3 (2006). However, he appeals the sentence imposed for all three convictions, as we discuss below.

enter the apartment building. When she looked out the peephole in her front door, she saw Wright and Ball in the hallway. They were each carrying a bundle of clothes, and Orteze saw a gun sticking out of Wright's bundle. Orteze called the police. Wright and Ball placed their bundles in front of an apartment door and left the building. The police arrived as Wright and Ball stepped outside. An officer ordered them to stop and place their hands in the air. Ball complied, but Wright hesitated and the officer again ordered him to put his hands up. After being told a third time to halt, Wright ran away. The officers chased Wright, who continued to disregard commands to stop. Finally, an officer shot Wright in the buttock as he was running up a railroad embankment, and Wright was taken into custody. The police recovered Wright's jacket and two handguns in the apartment building. Santiago's blood was found on Wright's clothing.

The State charged Wright with robbery, resisting law enforcement, and criminal confinement as a Class B felony. The jury found Wright guilty of robbery and resisting law enforcement as charged, but convicted him of criminal confinement as a Class D felony. The trial court sentenced Wright to an aggregate sentence of fifty years. He now appeals.

## DISCUSSION AND DECISION

### I. SUFFICIENCY OF THE EVIDENCE

■ In reviewing a sufficiency of the evidence claim, we do not reweigh the evidence or assess the credibility of the witnesses. *Treadway v. State*, 924 N.E.2d 621, 639 (Ind.2010). It is the fact-finder's role, not that of appellate courts, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction. *Drane v. State*, 867 N.E.2d 144, 146 (Ind.2007). Rather, we look to the evidence and reasonable inferences drawn therefrom that support the verdict, and we will affirm the conviction if there is probative evidence from which a reasonable jury could have found the defendant guilty beyond a reasonable doubt. *Treadway*, 924 N.E.2d at 639.

■ In order to convict Wright of robbery as charged, the State was required to prove beyond a reasonable doubt that Wright (1) knowingly or intentionally (2) took Santiago's vehicle from Santiago or Santiago's presence (3) by using or threatening the use of force on Santiago or by putting Santiago in fear (4) in a manner that resulted in serious bodily injury, specifically a gunshot wound, to Santiago's head. *See* Ind.Code § 35–42–5–1. Furthermore, at trial the jury was instructed that Wright could be found guilty of the robbery as an accomplice. Indiana Code section 35–41–2–4 (1977) provides, in relevant part, "[a] person who knowingly or intentionally aids, induces, or causes another person to commit an offense commits that offense...." In determining whether a person aided another in the commission of a crime, our Supreme Court has considered the following four factors: (1) presence at the scene of the crime; (2) companionship with another engaged in criminal activity; (3) failure to oppose the crime; and (4) a defendant's conduct before, during, and after the occurrence of the crime. *Garland v. State*, 788 N.E.2d 425, 431 (Ind.2003). A defendant is criminally liable for the use of a weapon by an accomplice even in the complete absence of evidence that the defendant was personally armed. *Merriweather v. State*, 778 N.E.2d 449, 458–59 (Ind.Ct.App.2002).

In this case, Wright contends that the evidence is insufficient to convict him of robbery as an accomplice. Turning to the factors set forth in *Garland*, Wright con-

cedes that he was present when Santiago was robbed. Furthermore, the evidence demonstrates that Wright was a close companion of Ball, the shooter. Santiago stated that he encountered Ball and Wright together at a hotel. Wright conceded that Ball was his "girlfriend" and that they had been staying together at the hotel. Tr. p. 407. In addition, Wright acted as Ball's pimp, asking Santiago for money in exchange for sex with Ball.

Next, instead of failing to oppose the robbery, Wright actively participated in it. After Ball shot Santiago, Wright removed Santiago from the van and drove off with Ball, thereby completing the robbery. Finally, Wright's conduct after the robbery provides additional proof that he aided in the crime. Instead of seeking medical assistance for Santiago, Wright remained with Ball after the robbery, fleeing with her in the van and then on foot. He separated from Ball only when their capture was imminent. This evidence is sufficient to convict Wright of robbery as an accomplice. *See Wieland v. State,* 736 N.E.2d 1198, 1203 (Ind.2000) (determining that the evidence was sufficient to convict the defendant of robbery as an accomplice where the defendant accompanied a friend into a store, personally took merchandise while his friend wielded a gun, and ran away from the store with his friend). Wright argues that the testimony of Santiago and other witnesses to the robbery was contradictory, but this is nothing more than a request to reweigh the evidence, which we cannot do. *See Drane,* 867 N.E.2d at 146 (noting that appellate courts must consider only the probative evidence and reasonable inferences supporting the verdict).

## II. DOUBLE JEOPARDY

Wright argues that his convictions for robbery and criminal confinement violate

Article I, Section 14 of the Indiana Constitution, which provides, in relevant part, "[n]o person shall be put in jeopardy twice for the same offense." [2] Two or more offenses are the "same offense" in violation of Article I, Section 14 of the Indiana Constitution, if, with respect to either the statutory elements of the challenged crimes or the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense. *Richardson v. State,* 717 N.E.2d 32, 49 (Ind.1999).

Wright contends that his convictions violate the "actual evidence" test. To show that two challenged offenses constitute the same offense under the actual evidence test, a defendant must demonstrate a reasonable possibility that the evidentiary facts used by the fact-finder to establish the essential elements of one offense may also have been used to establish the essential elements of a second challenged offense. *Spivey v. State,* 761 N.E.2d 831, 832 (Ind.2002). Application of the actual evidence test requires the reviewing court to identify the essential elements of each of the challenged crimes and to evaluate the evidence from the jury's perspective, considering where relevant the jury instructions, argument of counsel, and other factors that may have guided the jury's determination. *Id.*

In this case, the trial court instructed the jurors that in order to convict Wright of robbery, they had to determine beyond a reasonable doubt that he: (1) knowingly or intentionally (2) aided (3) another person "in the commission of the offense of Robbery (Class A Felony), defined as knowingly or intentionally taking property from the person or presence of another

**2.** Wright does not raise a double jeopardy claim under the United States Constitution.

person by using or threatening the use of force or by placing any person in fear, while armed with a deadly weapon, and resulting in serious bodily injury." Appellant's App. p. 88. Furthermore, the trial court instructed the jurors that in order to convict Wright of criminal confinement as a D felony, they had to determine beyond a reasonable doubt that he: (1) knowingly or intentionally (2) "confine[d] Reinaldo Santiago" (3) without Santiago's consent. Appellant's App. p. 110. Thus, the offenses as charged both require proof of the defendant's knowledge or intent to commit a crime but are otherwise dissimilar.

The evidence at trial established that when Ball drew a handgun and pointed it at Santiago's head, Wright grabbed Santiago and held him in place. Santiago was unable to get away. Santiago then testified that after Wright got out of the van and came around to his door, Ball shot him, and Wright pulled him out of the van. Several other witnesses to the incident testified that Wright did not get out of the van but instead struggled with Santiago inside the van and pushed him out of the door. In any event, Wright's grabbing of Santiago occurred while Ball had a gun pointed at Santiago and was immediately followed by Santiago's shooting and his removal from the van. A jury could have reasonably determined that Wright's actions constituting robbery of Santiago included Wright's confinement of Santiago. *See Polk v. State*, 783 N.E.2d 1253, 1259 (Ind.Ct.App.2003), *trans. denied* (finding that the defendant's robbery and criminal confinement convictions violated double jeopardy because only one confrontation occurred that resulted in the taking of the victim's property, and the confinement was not greater than that necessary to accomplish the robbery).

Turning to the State's closing argument, we note that during a discussion of the elements of robbery, the State told the jury, "[t]hey took his property, the property in his possession. A van. They used force on him, multiple types of force. Carlton Wright grabbed a hold of him and hand [sic] him and confined him into the van for some amount of time. A brief amount of time, but it was force." Tr. p. 485. Thus, the jury was led to believe that the same force used to confine Santiago could also be the same force used to rob him.

Based on the evidence presented and the State's argument to the jury, we conclude that there is a reasonable possibility that the evidentiary facts used by the fact-finder to establish the essential elements of criminal confinement were also used to establish the essential elements of robbery. *See Vanzandt v. State*, 731 N.E.2d 450, 455–56 (Ind.Ct.App.2000), *trans. denied* (determining that the defendant's convictions for robbery and criminal confinement violated double jeopardy because there was an absence of evidence to establish the essential elements of confinement independent of the robbery). Consequently, Wright's conviction for criminal confinement must be vacated.

### III. APPROPRIATENESS OF SENTENCE

Wright's sentencing challenge is governed by Indiana Appellate Rule 7(B), which provides, in relevant part, "[t]he Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." To assess the appropriateness of the sentence, we look first to the statutory range established for the classes of the offenses. Here, robbery is a Class A felony, for which the advisory sentence is thirty years, the shortest sentence is

twenty years, and the longest sentence is fifty years. Ind.Code § 35–50–2–4 (2005). Furthermore, for criminal confinement as a Class D felony, the advisory sentence is one and one-half years, the shortest sentence is six months, and the longest sentence is three years. Ind.Code § 35–50–2–7 (2005). Finally, the maximum sentence for resisting law enforcement as a Class A misdemeanor is one year. Ind.Code § 35–50–3–2 (1977). Wright received an aggregate sentence of fifty years, which was the maximum sentence for his robbery conviction, with the other two sentences to be served concurrently.[3]

We then look to the nature of the offenses and the character of the offender. The nature of the offenses is found in the details and circumstances of the commission of the offenses and the defendant's participation. *See, e.g., Treadway,* 924 N.E.2d at 642 (noting that the defendant's crimes were "horrific and brutal"). The character of the offender is found in what we learn of the offender's life and conduct. *See Lindsey v. State,* 916 N.E.2d 230, 241–42 (Ind.Ct.App.2009), *trans. denied* (reviewing the defendant's criminal history, probation violations, and history of misconduct while incarcerated). In making this determination, we may look to any factors appearing in the record. *Calvert v. State,* 930 N.E.2d 633, 643 (Ind.Ct.App.2010). Furthermore, we give due consideration to the trial court's decision and its more direct knowledge of the offense and the offender. *See Wilkes v. State,* 917 N.E.2d 675, 693 (Ind.2009) (stating, "[a]s in all sentencing, ... we give considerable deference to the ruling of the trial court"). A defendant must persuade the appellate court that his or her sentence has met the inappropriateness standard of review.

*Childress v. State,* 848 N.E.2d 1073, 1080 (Ind.2006).

Our review here of the nature of the offenses shows that Santiago, who had offered Wright and Ball a lift and showed them hospitality, was repaid by an unprovoked ambush that left him permanently blind. Due to his injury, Santiago was forced to quit his job as a welder and had to hire a caretaker. It is also noteworthy that after the robbery, Wright did not seek medical attention for Santiago's clearly grievous injury but instead callously abandoned him in the street. Furthermore, rather than disassociate himself from Ball after she shot Santiago, Wright fled with Ball and resisted all attempts at capture. In summary, the manner in which Wright committed his crimes demonstrates complete disregard for the lives and property of others.

Wright contends that because he was convicted as an accomplice, "his role in the offense was at best of a secondary nature." Appellant's Br. p. 27. We disagree. Wright grabbed Santiago and prevented him from escaping from Ball. Furthermore, Wright completed the robbery by removing Santiago from the van after Ball shot him. Finally, Wright individually ignored multiple demands by the police to halt and instead chose to continue to flee, even after Ball surrendered. Thus, Wright was an active and necessary participant in these crimes.

Our review here of the character of the offender shows that Wright, who was twenty-five years old at sentencing, had been adjudicated a juvenile for acts that would constitute intimidation if committed by an adult. Furthermore, as an adult Wright acquired a misdemeanor conviction for driving with a suspended license and felony convictions for theft and possession

---

**3.** Our determination above that Wright's criminal confinement conviction must be vacated does not affect our sentencing analysis because his sentence for criminal confinement was to be served concurrently with his sentence for robbery.

of a handgun without a license. Thus, Wright has a steady criminal history that has escalated in severity over time, culminating in the current convictions. Wright has also used marijuana occasionally since he was fifteen. Furthermore, during Wright's interactions with Santiago, Wright encouraged Santiago to give him money in exchange for sex with Ball, which reflects poorly on Wright's character. We conclude that Wright has failed to persuade us that his enhanced sentence is inappropriate. *See Patterson v. State*, 846 N.E.2d 723, 731 (Ind.Ct.App.2006) (determining that the maximum sentence for robbery resulting in serious bodily injury was appropriate in light of the severity of the harm to the victim and the defendant's criminal history).

## CONCLUSION

For the reasons stated above, we affirm the judgment of the trial court in part, reverse in part, and remand with instructions for the trial court to vacate Wright's conviction for criminal confinement.

Affirmed in part, reversed in part, and remanded with instructions.

BAKER, J., and BAILEY, J., concur.