# FOR PUBLICATION

ATTORNEY FOR APPELLANT:

**R. PATRICK MCGRATH**
Madison, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**HENRY A. FLORES, JR.**
Deputy Attorney General
Indianapolis, Indiana

**FILED**
Oct 07 2014, 8:59 am

**CLERK**
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

JUSTIN J. CLARK,                    )
                                    )
    Appellant-Defendant,           )
                                    )
        vs.                  )     No.  40A05-1402-CR-71
                                    )
STATE OF INDIANA,                   )
                                    )
    Appellee-Plaintiff.            )

APPEAL FROM THE JENNINGS CIRCUIT COURT
The Honorable Jon W. Webster, Judge
Cause No. 40C01-1106-FA-260

**October 7, 2014**

**OPINION – FOR PUBLICATION**

**PYLE, Judge**

Appellant/Defendant, Justin J. Clark ("Clark"), appeals his sentence of forty-five (45) years executed for his conviction of Class A felony robbery resulting in serious bodily injury.[1] He argues that the sentence was inappropriate in light of the nature of his offense and his character and that he should not have been sentenced to the same amount of time as his co-defendant. We disagree and conclude that the trial court's sentence was appropriate.

We affirm.

## ISSUE

Whether Clark's sentence was inappropriate in light of the nature of his offense and his character.

## FACTS

In the summer of 2011, two weeks after Clark was released from prison, his friend Keith Miller ("Miller") approached him with a plan to make money. Clark had met Miller in the Jackson County Jail in 2008, when both of them were inmates. Miller's plan was for the two of them to rob a jewelry store in North Vernon, Indiana. Miller had been to the jewelry store and had known about the store for several years. He claimed that he knew the store's camera setup and could get the video footage from the camera system after the robbery.

---

[1] Ind. Code § 35-42-5-1 (2011). We note that, effective July 1, 2014, a new version of this robbery resulting in serious bodily injury statute was enacted and that Class A felony robbery resulting in serious bodily injury is now a Level 3 felony. Because Clark committed his crimes in 2011, we will apply the statute in effect at that time.

Clark agreed with Miller's plan, and on June 16, 2011, they went to the North Vernon jewelry store. Miller engaged the store owner, Jim Pfeiffer ("Pfeiffer"), in conversation while Clark walked to the back of the store. Miller then struck Pfeiffer several times on the back of the head with a metal pipe and sprayed a substance into his right eye.[2] At that point, Clark jumped over the jewelry display case and began grabbing jewelry. However, Miller heard police arriving and alerted Clark, who dropped the jewelry in the store. The two then left the scene in a stolen vehicle and ran over Pfeiffer with their car in the process. As a result of the attack, Pfeiffer was hospitalized and had to close his store for two weeks.

Ultimately,[3] on August 31, 2011, the State charged Clark with Count I, Class A felony robbery resulting in serious bodily injury;[4] Count II, Class B felony robbery with a deadly weapon;[5] Count III, Class C felony battery resulting in serious bodily injury;[6] Count IV, Class D felony receiving stolen property;[7] Count V, Class A felony aiding robbery resulting in serious bodily injury;[8] Count VI, Class A felony attempted robbery resulting in serious bodily injury;[9] and Count VII, Class A felony attempted robbery

---

[2] It is not clear from the record what this substance was.

[3] The State also filed two previous charging informations on June 17, 2011 and August 19, 2011. This is the third and final amended charging information.

[4] I.C. § 35-42-5-1 (2011).

[5] I.C. § 35-42-5-1 (2011).

[6] I.C. § 35-42-2-1(a)(3)(2011).

[7] I.C. § 35-43-4-2.5 (2011).

[8] I.C. §§ 35-42-5-1 and 35-41-2-4 (2011).

[9] I.C. §§ 35-42-5-1 and 35-41-5-1 (2011).

resulting in serious bodily injury.[10]   The State also filed an habitual offender enhancement alleging that Clark was an habitual offender because he had been convicted of more than two prior unrelated felonies.  On July 8, 2013, Clark pled guilty to Class A felony robbery resulting in bodily injury pursuant to a plea agreement.  In exchange for Clark's guilty plea, the State dismissed the remaining charges against him, as well as his habitual offender enhancement.  Clark and the State also agreed to leave sentencing open to the trial court's discretion.

Subsequently, on January 14, 2014, the trial court held a sentencing hearing. Pfeiffer testified at the hearing regarding the effect Clark's offense had on him and his family.  In addition to requiring two weeks of hospitalization following the robbery and losing profits from having to close the store during that time, Pfeiffer said that he still had trouble with his vision, especially in his right eye, which was "becoming increasing[ly] worse."  (Tr. 18).  He also said that he and his family had become afraid to work in the jewelry store, had suffered from emotional anguish, and feared retribution from Clark or people affiliated with Clark.

Later in the hearing, Clark testified that he had cooperated with law enforcement throughout the investigation and had told them where they could find the metal pipe Miller used in the robbery.  Clark also reported to the court that he had testified against Miller during Miller's trial.  However, Clark admitted that he had known prior to the robbery that Miller's plan was to "hit" Pfeiffer "with something."  (Tr. 69).

---

[10] I.C. §§ 35-42-5-1; 35-41-2-4; and 35-41-5-1 (2011).

4

Samuel Thomas Beard ("Commander Beard"), the Commander for the Jennings County Sheriff's Office, also testified at the hearing and stated that Clark had been "acting out" and "disrupting the normal operations of the Jail" since his incarceration. (Tr. 27). Clark had committed several "major offenses" while incarcerated, including attempting to escape his cell block, holding cell, or other place of confinement on at least three occasions; fighting, threatening another with bodily harm, or assaulting an individual on at least four occasions; possessing contraband or prohibited property on at least three occasions; and destroying or defacing jail property on at least seven occasions. Overall, he had nineteen major "write-ups" in the Jennings County Jail. (Tr. 31). Eventually, he was moved to the Floyd County Jail, which had the ability to segregate him from other inmates. Commander Beard testified that officers in Floyd County had reported that Clark was also an "extreme behavioral problem" there. (Tr. 30).

At the conclusion of the hearing, the trial court sentenced Clark to forty-five (45) years executed in the Department of Correction. The court found as aggravating factors: (1) the long-term emotional and physical harm Pfeiffer and his family had suffered and will continue to suffer; (2) the randomness of the victim and the premeditation of the offense by "casing the joint"; (3) Clark's criminal history; (4) Clark's outstanding criminal warrant in the State of Tennessee; (5) Clark's lack of gainful employment; (6) Clark's longtime drug abuse; (7) Clark's behavior while incarcerated; and (8) Clark's previous gang affiliation. (Tr. 80). As mitigating factors, the court recognized Clark's guilty plea, his "disjointed childhood," and his eventual cooperation with law

5

enforcement. (Tr. 80). Clark now appeals. We will provide additional facts as necessary.

## DECISION

On appeal, Clark argues that his sentence is inappropriate in light of the nature of his offense and character, and he requests that we revise his sentence pursuant to Appellate Rule 7(B). Under Appellate Rule 7(B), a reviewing court may revise a sentence if, after due consideration of the trial court's decision, it finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender. *Childress v. State*, 848 N.E.2d 1073, 1079-80 (Ind. 2006). In determining whether a sentence is inappropriate, we look at the defendant's culpability, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case. *Moss v. State*, 13 N.E.3d 440, 447 (Ind. Ct. App. 2014). Although this Court is not required to use "great restraint" in evaluating a sentence under Appellate Rule 7(B), we nevertheless exercise deference to a trial court's sentencing decision, both because Appellate Rule 7(B) requires that we give "due consideration" to that decision and because we recognize the unique perspective a trial court has when making decisions. *Stewart v. State*, 866 N.E.2d 858, 865-66 (Ind. Ct. App. 2007). We recognize that the "principal role of appellate review should be to attempt to leaven the outliers and to identify some guiding principles for trial courts and those charged with improvement of the sentencing statutes, but not to achieve a perceived 'correct' result in each case." *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008). The defendant bears the burden of persuading this Court that his sentence is inappropriate. *Childress*, 848 N.E.2d at 1080.

6

Primarily, Clark argues that the trial court should not have sentenced him to forty-five (45) years, which is five (5) years below the maximum for a Class A felony, because Miller was also sentenced to forty-five (45) years and had a greater role in the offense. S*ee* I.C. § 35-50-2-4. He also argues that, although Pfeiffer's injuries were extensive, serious bodily injury was contemplated as part of his offense, and Pfeiffer's injuries were not excessive enough to justify his sentence.

In support of his first argument, Clark cites to *Trowbridge v. State*, 717 N.E.2d 138, 150 (Ind. 1999), *reh'g denied*, in which our Supreme Court noted that, although we are not required to compare sentences among those convicted of the same or similar crimes, we are not precluded from doing so. Clark argues that Miller was responsible for casing the jewelry store, enlisting Clark, and attacking Pfeiffer, whereas he was unarmed, voluntarily confessed, cooperated with law enforcement, and testified against Miller. He contends that, as a result of these actions, he was less culpable for the offense than Miller and should receive a lower sentence. We disagree with Clark and find that, even if Miller had a greater role in planning and perpetuating the offense, Clark's sentence was appropriate.

Significantly, we must note that, even if we *may* compare sentences among those convicted of the same crimes, we are not required to do so. *Id.* Nevertheless, even if we do compare Clark and Miller's actions, their culpability was substantially the same. Even though it was Miller who planned the robbery, Clark acquiesced to the plan. Also, it is clear that even if Clark was unarmed and did not attack Pfeiffer himself, he knew ahead of time that Miller was going to "hit" Pfeiffer "with something" and proceeded with the

robbery anyway. (Tr. 69). Finally, with respect to their actions after their arrests, although Clark eventually cooperated with law enforcement, testified against Miller, and pled guilty to his offense, it was in his best interests to do so. In exchange for his guilty plea, the State dismissed the remaining six charges against him as well as the habitual offender enhancement. We have previously held that a plea may not be significantly mitigating when a defendant receives a substantial benefit in exchange. *Anglemyer v. State*, 875 N.E.2d 218, 221 (Ind. 2007), *clarifying decision on reh'g*.

Next, Clark argues that the nature of his offense did not warrant his sentence because, although Pfeiffer suffered serious injuries, serious bodily injury was a statutory element of his offense. We acknowledge that serious bodily injury was an element of Clark's offense. However, we do not find Clark's argument dispositive because the extent of Pfeiffer's injuries was only one factor contributing to the severity of Clark's offense. Other aspects of Clark's offense and his character are sufficient to warrant his sentence absent consideration of Pfeiffer's injuries.

Specifically, in terms of the nature of Clark's offense, Clark's actions were pre-meditated. He heard Miller's plan for the robbery and robbed Pfeiffer knowing that Miller was going to "hit" Pfeiffer and that Pfeiffer could suffer serious bodily injuries. (Tr. 69). Moreover, Clark and Miller did not merely "hit" Pfeiffer. Pfeiffer was hit on the head "several times" with a metal bar and sprayed in the eye with an unknown liquid. Miller and Clark then ran over Pfeiffer with a stolen car attempting to get away from the police.

8

Additionally, Clark's character supports his sentence. This is not Clark's first major offense, and he has a significant criminal history. At only twenty-five years old, he has had four prior felony convictions, two misdemeanor convictions, and still has an outstanding criminal warrant for an offense in Tennessee. While incarcerated in Jennings and Floyd Counties, Clark continued to have behavioral issues and had nineteen major write-ups in Jennings County alone. It is not clear from the record how many write-ups he accumulated after his transfer to the Floyd County Jail, but Commander Beard testified that officers at the Floyd County Jail reported that Clark continued to have "extreme behavioral problem[s]" in Floyd County. (Tr. 30). Finally, the one time Clark was given the benefit of probation, he violated that probation. These facts demonstrate that Clark has a substantial and continuing disregard for the law and authority. Therefore, in light of the nature of Clark's offense and this evidence of his character, we conclude that the trial court's sentence was not inappropriate. We decline to revise it under Appellate Rule 7(B).

Affirmed.

NAJAM, J., and BAILEY, J., concur.