## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Aug 16 2019, 7:58 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Bruce W. Graham
Graham Law Firm P.C.
Lafayette, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

J.T. Whitehead
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Manford F. Girten Jr., *Appellant-Defendant,* | August 16, 2019 |
| v. | Court of Appeals Case No. 18A-CR-2252 |
| | Appeal from the Tippecanoe Superior Court |
| State of Indiana, *Appellee-Plaintiff* | The Honorable Steven P. Meyer, Judge |
| | Trial Court Cause No. 79D02-1802-F3-4 |

**May, Judge.**

[1] Manford F. Girten Jr. appeals his convictions of Level 3 felony rape,[1] Level 6 felony criminal confinement,[2] Level 6 felony strangulation,[3] and three counts of Class A misdemeanor invasion of privacy.[4] Girten argues the trial court abused its discretion when it did not grant a mistrial after violation of the court's *in limine* order, and his convictions of rape, criminal confinement, and strangulation violate his constitutional right to be free of double jeopardy. Girten also argues his sentence was inappropriate. We affirm in part and reverse in part.

# Facts and Procedural History

[2] E.A. began dating Girten on August 14, 2017. E.A. was a member of the Blue Jacket Club ("Club"). The Club is comprised of Purdue University students who are Catholic or High Church Anglican. E.A. was close friends with Colten Austermann, another member of the Club. Girten believed E.A. and Austermann were romantically involved, despite E.A. telling Girten there was no romantic relationship between herself and Austermann.

[3] On September 28, 2017, E.A. was out with Girten when she received a text from Austermann asking if E.A. would be at a Club event. E.A. replied to tell

---

[1] Ind. Code § 35-42-4-1(a)(1) (2014).

[2] Ind. Code § 35-42-3-3(a) (2014).

[3] Ind. Code § 35-42-2-9(c) (2014).

[4] Ind. Code § 35-46-1-15.1(a)(2) (2017).

Austermann she would not be attending. Girten began to yell at E.A. for responding to Austermann's text. Girten continued to yell at E.A. when they returned to E.A.'s apartment. E.A. became upset. Girten pulled E.A. onto the floor and demanded a kiss in order to show they had "made up." (Tr. Vol. II at 156.) When E.A. refused to kiss, Girten dragged E.A. across the floor, running her into furniture, and then pinned her down by her wrists. E.A., who had trained in judo, tried to use self-defense moves to remove Girten. However, Girten, a "champion level martial artist" himself, was able to restrain E.A. (*Id.* at 159.) At some point, Girten released E.A. and allowed her to stand up. E.A. asked Girten to leave, but he refused and insisted E.A. give him a kiss. E.A., still scared and upset, refused and instead offered a hug. Girten grabbed E.A. by the hair and pinned her against the wall. E.A. still refused to kiss Girten, and he again released her.

[4]     Girten stayed the night and slept in E.A.'s bed while E.A. slept on the couch. E.A. left her apartment after midnight to meet Austermann and another member of the Club. E.A. left a note for Girten to let him know where she had gone. Austermann drove E.A. home between four and six in the morning. Girten was still in E.A.'s apartment and told E.A. he was watching her and Austermann. Girten yelled at E.A. for being alone with Austermann, and he continued to yell at E.A. until he left for work.

[5]     The next day, Girten texted E.A. and threatened to hurt her or Austermann if she was alone with him again. Later in the day, Girten picked up E.A. to go buy furniture, and then they returned to E.A.'s apartment. E.A. tried to take a

nap, but Girten lectured her about Austermann. Later that night E.A. and Girten met two friends at a bar. They went to a few bars that night before E.A. and Girten returned to E.A.'s apartment around 11 p.m. E.A. and Girten were watching a show when Girten tried to place E.A.'s hand on his genitals. When she pulled back, Girten pinched her arm, leaving it feeling weak and tingly. Girten told E.A. he could paralyze her arm.

[6] E.A. went to the bedroom and stood at the foot of her bed. Girten came up behind her and pushed her onto the bed. Girten pulled off E.A.'s pants and underwear as she was trying to escape. As E.A. tried to crawl away, Girten flipped E.A. over onto her back. E.A. begged for Girten to stop and give back her underwear. Girten told her to "shut up." (*Id.* at 181.) Girten told E.A. he would return her underwear if she stopped begging him to stop. E.A. became silent, but instead of returning her underwear, Girten moved his face toward her genitals. Girten put his hand around E.A.'s throat and used his thumb to make it hard for her to breathe. When Girten let go of E.A.'s throat, he used his hand to keep E.A. from talking.

[7] During all of this, Girten managed to undress. Girten took his penis and put the tip in her vagina and anus, alternating between them. Girten told E.A. he could use either his penis or his tongue. Girten forced E.A.'s legs apart. E.A. told Girten to stop and continued to resist. Girten put his face towards E.A.'s genitals and inserted his tongue into her vagina. E.A. continued to struggle and to beg Girten to stop. Girten then stuck his fingers in her vagina. When Girten stopped, E.A. curled into the fetal position. Girten amusingly told E.A.: "You

say you don't want it, but I can tell that you're wet." (*Id.* at 186.) E.A. told Girten she did not want it.

[8] Girten's demeanor became angry, and he pulled E.A. across the bed, forced himself between E.A.'s legs, and inserted his penis into her vagina. At the same time, he began to interrogate E.A. about Austermann. E.A. told Girten if he did not stop she would scream. Girten stopped, and E.A. ran out of the room wrapped in a blanket. She could not find her phone and did not think she could escape Girten, so she locked herself in the bathroom. Girten paced outside the bathroom, banging on the door and telling E.A. he would kick the door down if she did not unlock it.

[9] E.A. grabbed a flat iron to use as a weapon. Afraid something worse might happen, E.A. exited the bathroom. Girten was holding E.A.'s phone when she got out of the bathroom. E.A. sat on the couch, and Girten asked her about a message she received from a male friend. E.A. told Girten it was nothing to worry about. E.A. went to the bedroom to get dressed. Girten pulled the blanket off of E.A. and said, "I guess I'll let you get dressed." (*Id.* at 191.) E.A. got dressed and Girten again pinned her to the bed and tried to kiss her. Girten used his thumb to pry E.A.'s mouth open and stuck his tongue in it. Girten asked E.A. if she wanted Girten to leave, to which she replied, "Yes." (*Id.* at 192.) Girten said he was not going to leave.

[10] E.A. suggested they go to bed, hoping Girten would leave for work in the morning. Throughout the night, Girten put E.A.'s hand on his genitals or

placed his hand on her genitals. In the morning, E.A. told Girten to go to work. Girten told her he was not going to work. E.A. kept telling Girten to leave, and he finally left around 10 a.m. Once Girten left, E.A. drove herself to the hospital to be examined. E.A. was at the hospital for six or seven hours. While she was there, Girten called and texted her a total of thirty-six times.

[11] E.A. was examined by Sexual Assault Nurse Examiner Aislynn Greiner. E.A. was suffering from soreness and tenderness. Nurse Greiner noted discoloration around E.A.'s chin, neck, and right, inner thigh. While at the hospital, E.A. met with Detective Heath Provo. Detective Provo took statements from both E.A. and Nurse Greiner. Detective Provo observed bruises, marks, and scratches on multiple parts of E.A.'s body.

[12] On October 5, 2017, E.A. obtained a protective order against Girten. Girten nevertheless continued to reach out to E.A. Because E.A. felt afraid to leave her apartment, she moved to a new location.

[13] On February 26, 2018, Girten was charged with Level 3 felony rape, Level 5 felony criminal confinement,[5] Level 5 felony stalking,[6] Level 6 felony criminal confinement, Level 6 felony intimidation,[7] Level 6 felony strangulation, two

---

[5] Ind. Code § 35-42-3-3(a) (2014).

[6] Ind. Code § 35-45-10-5(a) (2014).

[7] Ind. Code § 35-45-2-1(a)(1) (2017).

counts of Class A misdemeanor domestic battery,[8] and three counts of Class A misdemeanor invasion of privacy. After three days, a jury found Girten not guilty of Level 5 felony stalking and one count of Class A misdemeanor domestic battery, but guilty of the other nine counts. At sentencing, the trial court merged the guilty findings of Level 5 felony criminal confinement, Level 6 felony intimidation, and Class A misdemeanor domestic battery into the conviction of Level 3 felony rape. The trial court imposed an aggregate twenty-three-year sentence, with three years suspended to probation.

# Discussion and Decision

## Motion for Mistrial

[14] Girten argues the trial court abused its discretion by failing to grant his request for a mistrial. A mistrial is an "extreme remedy warranted only when no other curative measure will rectify the situation." *Kirby v. State*, 774 N.E.2d 523, 533 (Ind. Ct. App. 2002), *reh'g denied, trans. denied*.

> Because the trial court evaluates first-hand the relevant facts and circumstances at issue and their impact on the jury, it is in the best position to evaluate whether a mistrial is warranted. We accordingly review the trial court's denial of a motion for mistrial for an abuse of discretion.

---

[8] Ind. Code § 35-42-2-1.3(a)(1) (2016).

*Weisheit v. State*, 26 N.E.3d 3, 15 (Ind. 2015) (internal citations omitted), *reh'g denied, cert. denied* 136 S. Ct. 901 (2016). To preserve this issue for appeal, a party must timely object and request an admonition or mistrial. *Brown v. State*, 799 N.E.2d 1064, 1066 (Ind. 2003).

[15] Girten argues he should have been granted a mistrial because the court's *in limine* order was violated in two different ways. Paragraph eight of the Motion in Limine states:

> Defendant, by counsel, respectfully requests an Order prohibiting the State of Indiana from offering into evidence, discussing during jury selection, mentioning during argument, or otherwise bringing before the jury the following evidence, to-wit:
>
> \*\*\*\*\*
>
> (8) Any reference to E.A. being the "victim" or reference to the "rape". Whether E.A. is a victim and whether a rape occurred is the ultimate issue for the jury to decide. (Evidence Rule 704 (b))."

(App. Vol. II at 73-74.) In regard to Paragraph 8, the trial court's order stated, "Paragraph number 8 is GRANTED under the condition the terms may be used at the appropriate time."[9] (*Id.* at 76.)

---

[9] Counsel and the trial court agreed the appropriate time would be during the opening statement and closing argument. (*See* Tr. Vol. II at 66.)

### References to E.A. as "victim"

[16]     While testifying, an investigating officer twice referred to E.A. as the "victim." (Tr. Vol. II at 105, 107.)  After the second use of the term, Girten objected for violation of the *in limine* order.  The trial court and the attorneys stepped outside the presence of the jury to discuss the matter and determined the court would admonish the officer to refrain from using the term "victim."  (Tr. Vol. II at 108.)  After the trial court admonished the officer, the court asked if this cured the defense concern, and Girten's attorney replied, "Best we can do, Judge."  (Tr. Vol. II at 110.)

[17]     Girten's response suggested he was satisfied with the trial court's admonishment of the witness and did not wish the court to take any other corrective measures.  Under the doctrine of invited error, "a party may not take advantage of an error that she commits, invites, or which is the natural consequence of her own neglect or misconduct."  *Wright v. State*, 828 N.E.2d 904, 907 (Ind. 2005) (internal quotation and citation omitted).  Because Girten did not ask for an additional remedy when the court inquired whether the court had cured the issue, Girten cannot now assert the trial court abused its discretion by failing to grant a mistrial.  *See id.* (party that invited error at trial cannot take advantage of it on appeal).

### E.A.'s use of the word "rape"

[18]     The other violation of the *in limine* order occurred when E.A. was testifying. While testifying about the timeline of her relationship with Girten, E.A. used

the word "rape." (Tr. Vol. II at 149.) Girten moved for a mistrial, but the trial court denied his request. The trial court admonished E.A. and told her to not use the term "rape" as it was prohibited by the pre-trial order. (*Id*. at 152.) Now, on appeal, Girten asserts the trial court should have struck E.A.'s answer from the record.

[19] Girten's attorney did not move for the trial court to strike the testimony from evidence. (*See* Tr. Vol. II at 149-153.) "A party who fails to make a timely objection, or, for that matter, to file a timely motion to strike, normally waives the right to have the evidence excluded at trial and the right on appeal to assert the admission of evidence as erroneous." *Stroud v. State*, 587 N.E.2d 1335, 1340 (Ind. Ct. App. 1992). Because Girten did not move to strike E.A.'s testimony from the record at trial, he cannot allege on appeal that the trial court erred by failing to strike that evidence from the record.

### Cumulative Error

[20] Despite the facts that Girten suggested the court's admonition of the officer was sufficient and that Girten did not ask the trial court to strike E.A.'s mention of rape from the record, we consider whether Girten was prejudiced by the cumulative impact of these three violations of the *in limine* order. The erroneous admission of evidence may be harmless if that evidence is cumulative of other evidence admitted. *Zanders v. State*, 118 N.E.3d 736, 752 (Ind. 2019). "An error is harmless when it results in no prejudice to the substantial rights of a party. While there are important contextual variations to this rule, the basic

premise holds that a conviction may stand when the error had no bearing on the outcome of the case." *Durden v. State*, 99 N.E.3d 645, 652 (Ind. 2018).

[21] At trial, the jury heard testimony from E.A. regarding the sexual assault on September 29, 2017, and other incidents of violence by Girten around that same time, testimony from Nurse Greiner as to the injuries E.A. suffered as a result of the sexual assault, and testimony from Detective Provo as to the injuries he observed on E.A. The jury also saw pictures of those injuries and text messages between E.A. and Girten discussing the assault. Thus, the jury had an abundance of evidence supporting its decision. Under these circumstances, we cannot say the trial court committed reversible error when it denied Girten's motion for mistrial. *See Finney v. State*, 786 N.E.2d 764, 768 (Ind. Ct. App. 2003) (improper admission of a witness' testimony was harmless where other evidence conclusively demonstrated guilt).

## Double Jeopardy

[22] Girten next argues three of his nine convictions violate his constitutional right to be free from double jeopardy. *See* Ind. Const. Art. 1, § 14 ("No person shall be put in jeopardy twice for the same offense."). Two offenses are the "same offense" in violation of Indiana's Double Jeopardy Clause if, with respect to either the statutory elements of the challenged crimes or the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense. *Spivey v. State*, 761 N.E.2d 831, 832 (Ind. 2002). To determine whether the statutory elements test is

violated, we apply the federal test: "whether each provision requires proof of an additional fact which the other does not." *Blockburger v. United States*, 284 U.S. 299, 304, 52 S. Ct. 180, 182 (1932).

We review *de novo* whether a defendant's convictions violate this provision. *Spears v. State*, 735 N.E.2d 1161, 1166 (Ind. 2000), *reh'g denied*. "When two convictions are found to contravene double jeopardy principles, a reviewing court may remedy the violation by reducing either conviction to a less serious form of the same offense if doing so will eliminate the violation. If it will not, one of the convictions must be vacated." *Richardson v. State*, 717 N.E.2d 32, 54 (Ind. 1999), *holding modified by Garrett v. State*, 992 N.E.2d 710 (Ind. 2013) (modification as to cases involving hung jury or acquittal).

### Rape and Criminal Confinement

Girten argues his conviction of both rape and criminal confinement violates the "actual evidence" test. The actual evidence test requires us to "determine whether each challenged offense was established by separate and distinct facts." *Richardson*, 717 N.E.2d at 53. To determine what facts were used to convict, we consider the charging information, the final jury instructions, the evidence, and the arguments of counsel. *Davis v. State*, 770 N.E.2d 319, 324 (Ind. 2002), *reh'g denied*. The elements of Level 3 felony rape as charged against Girten are: (1) Girten; (2) knowingly or intentionally; (3) had sexual intercourse; (4) with E.A.; (5) while E.A. was compelled by force or imminent threat of force. *See* Ind. Code § 35-42-4-1(a)(1). The elements of Level 6 felony criminal confinement

are: (1) Girten; (2) knowingly or intentionally; (3) confined E.A.; (4) without E.A.'s consent. *See* Ind. Code § 35-42-3-3(a).

[25] In its closing argument, the State argued the evidence satisfied the fifth element of Level 3 felony rape because Girten held E.A. down on the bed. (*See* Tr. Vol. III at 189.) When explaining the evidence supporting a conviction of Level 6 felony criminal confinement, the prosecutor said:

> He confined her in the bedroom, but he confined her after that. Remember she wanted him to leave and he wouldn't leave, and she wanted to get up and he wouldn't let her? When she ran out of the bathroom after the assault in the bedroom was over, she ran out of the bathroom, and when she did, the Defendant was standing in front of the door so she couldn't leave the apartment. This was after he had threatened to bang down the - to beat down the door, where she had frantically looked for a weapon only to find a hair straightener. If you look through those photographs, it's sitting at the very top on a pile of clothes, within easy reach.

(*Id*. at 190.)

[26] While the prosecutor's argument as to Level 6 felony criminal confinement first mentioned the confinement that occurred in the bedroom, our reading of the record leaves us without doubt that this reference was made to distinguish the two counts of criminal confinement: this Level 6 felony, which was the fourth count discussed during closing argument, and the Level 5 felony that was the second count discussed in closing argument. (*See id*. at 191-92.) The Level 5 felony criminal confinement was supported by facts that occurred in the bedroom, (*see id*.), and the trial court merged the jury's guilty finding of that

confinement into Girten's conviction of rape. (*See id.* at 238.) After mentioning that Girten had confined E.A. in the bedroom, the prosecutor then argued the facts that applied strictly to Level 6 felony criminal confinement. Because the jury was urged to rely on evidence of confinement that occurred outside the bedroom while convicting Girten of Level 6 felony criminal confinement, Girten was not subjected to double jeopardy when simultaneously convicted of rape and Level 6 felony criminal confinement. *See Ho v. State*, 725 N.E.2d 988, 992 (Ind. Ct. App. 2000) (independent evidence used to establish separate elements allowed for convictions of multiple crimes).

### *Rape and Strangulation*

[27]     Girten next argues the acts he committed when E.A. was on the bed were one continuous act, such that his act of strangulation occurred during the rape, and he should not be convicted of both rape and strangulation. In support he cites the continuing crime doctrine, which "essentially provides that actions that are sufficient in themselves to constitute separate criminal offenses may be so compressed in terms of time, place, singleness of purpose, and continuity of action as to constitute a single transaction." *Boyd v. State*, 766 N.E.2d 396, 400 (Ind. Ct. App. 2005), *trans. denied*. In effect, the doctrine "defines those instances where a defendant's conduct amounts only to a single chargeable crime." *Hines v. State*, 30 N.E.3d 1216, 1219 (Ind. 2015).

[28]     We addressed a similar issue in *Gomez v. State*, 56 N.E.3d 697 (Ind. Ct. App. 2016). In *Gomez*, the defendant was convicted of three counts of domestic battery all stemming from one single altercation. Gomez grabbed a woman,

slammed her into a wall, and pulled her hair. We held all of Gomez's actions were "so compressed in time, place, and singleness of purpose, that the action constituted as a single transaction." *Id*. at 704. Accordingly, we reversed two of Gomez's convictions. *Id*. at 705.

[29] Here, E.A. testified to the events that occurred on September 29, 2019. E.A. explained that, as Girten attempted to rape her, he placed his hand around her throat and made it difficult to breathe. (Tr. Vol. II at 182-183.) Although the prosecutor attempted to separate out elements and facts to support separate crimes, it is apparent from the transcript that the strangulation occurred during the act of rape and thus was not a separate offense. Girten choked E.A. while he had her pinned on the bed and was undressing himself to penetrate her. Because the strangulation and rape were "compressed in terms of time, place, singleness of purpose, and continuity of action[,]" *Boyd,* 766 N.E.2d at 400, we must vacate Girten's conviction of Level 6 felony strangulation. *See Gomez*, 56 N.E.3d at 705 (because defendant's alleged acts were sufficiently compressed in time, place, and singleness of purpose, the convictions violated the continuous crime doctrine).

## Appropriate Sentence

[30] Girten also argues his sentence is inappropriate in light of his character and the nature of his offense.

> We "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and

the character of the offender." Ind. Appellate Rule 7(B). "Although appellate review of sentences must give due consideration to the trial court's sentence because of the special expertise of the trial bench in making sentencing decisions, Appellate Rule 7(B) is an authorization to revise sentences when certain broad conditions are satisfied." *Shouse v. State*, 849 N.E.2d 650, 660 (Ind. Ct. App. 2006), *trans. denied* (citations and quotation marks omitted). "[W]hether we regard a sentence as appropriate at the end of the day turns on our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." *Cardwell v. State*, 895 N.E.2d 1219, 1224 (Ind. 2008). In addition to the "due consideration" we are required to give to the trial court's sentencing decision, "we understand and recognize the unique perspective a trial court brings to its sentencing decisions." *Rutherford v. State*, 866 N.E.2d 867, 873 (Ind. Ct. App. 2007).

*Couch v. State*, 977 N.E.2d 1013, 1017 (Ind. Ct. App. 2012), *reh'g denied, trans. denied*. The appellant bears the burden of demonstrating his sentence is inappropriate. *Amalfitano v. State*, 956 N.E.2d 208, 212 (Ind. Ct. App. 2011), *trans. denied*.

[31] When considering the nature of the offense, the advisory sentence is the starting point for determining the appropriateness of a sentence. *Anglemyer v. State*, 868 N.E.2d 482, 494 (Ind. 2007), *clarified on reh'g* 875 N.E.2d 218 (Ind. 2007). The sentence for a Level 3 felony is between six and sixteen years with the advisory sentence being nine years. Ind. Code § 35-50-2-5(b) (2014). Girten was sentenced to fifteen years, thus receiving below the maximum but above the advisory sentence for his rape conviction. The sentence for a Level 6 felony is

between six months and two-and-one-half years, with the advisory sentence being one year. Ind. Code § 35-50-2-7 (2016). Girten was sentenced to two-and-one-half years for each of his Level 6 felonies, thus receiving the maximum sentence for both criminal confinement and strangulation. The sentence for a Class A misdemeanor is a fixed term of not more than one year. Ind. Code § 35-50-3-2 (1976). Girten was sentenced to one year in prison for each of his invasion of privacy convictions, thus receiving the maximum sentence for each. The court ordered Girten to serve his sentences consecutively, for an aggregate sentence of twenty-three years in prison, with three years suspended to probation.[10] Because we vacated Girten's conviction of strangulation on double jeopardy grounds, Girten's sentence is reduced by two-and-one-half years, such that it now is twenty-and-one-half years, with six months suspended to probation. We review the appropriateness of his modified sentence.

[32] Regarding the nature of Girten's offense, the trial court noted the seriousness of Girten's crimes. Girten raped and confined E.A. within her own apartment. The trial court also acknowledged the impact the attack had on E.A. E.A. told the court that, since the attack, she has had night terrors, she fears Girten will seek revenge when he is released, and she still struggles to leave her house to do

---

[10] Girten asserts the trial court erred when it ordered Girten to serve his sentences for the convictions of rape, criminal confinement, and strangulation consecutively, because they all stem from one criminal act. As we addressed in the double jeopardy analysis, the act of criminal confinement occurred after the rape, when E.A. was not allowed to leave her apartment. Additionally, we vacated the conviction of strangulation. Therefore, Girten argument as to consecutive sentences has no merit.

simple tasks. (App. Vol. II at 173.) The severity and brutality of Girten's actions have greatly impacted E.A. and the way she goes about her life.

[33] As to Girten's character, the trial court noted Girten was in school, employed, and previously had served in the military. However, the court also pointed out Girten has a lengthy criminal history including convictions for assault, child abuse, twice violating protective orders, and menacing, among numerous other crimes. The trial court also found Girten's lack of remorse to be an aggravating factor, along with Girten being involved in two fights in jail while waiting for his sentencing. *See Deane v. State*, 759 N.E.2d 201, 205 (Ind. 2001) (defendant's lack of remorse allows for an enhanced sentence).

[34] Given the nature of the offenses (*i.e.*, the seriousness of the offenses and the long-term impact it has had on the victim) and the character of the offender (*i.e.*, Girten's lengthy criminal record and lack of remorse), we cannot say Girten's twenty-and-one-half year sentence is inappropriate. *See Clark v. State*, 26 N.E.3d 615, 619 (Ind. Ct. App. 2014) (defendant's extensive criminal history showed bad character and allowed for aggravated sentence), *trans. denied.*

# Conclusion

[35] The three minor violations of the order *in limine* were harmless in light of the substantial evidence in the record. Girten's claim of a double jeopardy violation regarding his conviction for Level 6 felony criminal confinement fails because the jury was told to rely on evidence of confinement that was separate

from the confinement that occurred during the rape. However, because the strangulation occurred during the act of rape, we must vacate Girten's conviction of Level 6 felony strangulation. Additionally, in light of Girten's character and the nature of his offense, his now twenty-and-one-half year sentence is not inappropriate. Accordingly, we affirm in part and reverse in part.

[36]   Affirmed in part and reversed in part.

Mathias, J., and Brown, J., concur.