## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Aug 30 2019, 8:52 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

John A. Goodridge
Evansville, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Megan M. Smith
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Christopher Theophilus Gilmore,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

August 30, 2019

Court of Appeals Case No.
19A-CR-639

Appeal from the Vanderburgh Circuit Court

The Honorable David D. Kiely, Judge

Trial Court Cause No.
82C01-1705-F1-3092

**May, Judge.**

[1] Christopher Theophilus Gilmore appeals his sentence for Level 2 felony robbery resulting in serious bodily injury.[1] He argues his twenty-seven-year executed sentence is inappropriate given his character and the nature of his offense. We affirm.

## Facts and Procedural History

[2] Around 7 p.m. on May 19, 2017, Gilmore went to a neighbor's house and drank beer. He then returned to the home he shared with his sixty-five-year-old mother, Arris Mctier. Gilmore sat in the garage and drank wine until he decided to go to the kitchen. Mctier confronted Gilmore in the kitchen. Gilmore engaged in fist fight with his mother, stabbed his mother, threw a glass cup at her, and kicked her in the face. He changed his clothes, fell asleep, and left the house early the next morning.

[3] Evansville Police Officers responded to a call on May 20, 2017, and discovered Mctier on the floor, bleeding profusely from her head, arms, and body. A neighbor told officers that Gilmore left the house about twenty minutes before the officers arrived. The house was in disarray with glass on the floor, blood splatter on the wall, and furniture overturned. An ambulance transported Mctier to the hospital. Emergency room personnel gave her six pints of blood

---

[1] Ind. Code § 35-42-5-1(a).

and treated the stab wounds on her face, arms, and hands. She also required assistance breathing, suffered facial fractures, and was in extreme pain.

[4] Pursuant to a search warrant, officers discovered a blood-stained knife and a broken glass mug with blood on it in the house. They also found a bloody pair of shoes and a bloody t-shirt in Gilmore's room. Later that afternoon, officers found Gilmore wandering the streets. He told officers he hit his mother, he was tired of being harassed by her and his sisters, he used a knife to cut his mother, and he threw a glass at her. Gilmore also said he was too mad to call an ambulance for his mother after the assault and he changed his shoes because his bloodstained shoes were "too nasty to walk in." (App. Vol. II at 15.) When Gilmore left the house, he took his mother's debit card and some of her personal property. When Gilmore was informed that his mother was in the intensive care unit and might not survive, he said "okay." (*Id.*)

[5] On May 23, 2017, the State charged Gilmore with Level 1 felony attempted murder.[2] On June 29, 2017, Gilmore moved for a psychiatric examination to determine his competence to stand trial and to determine his sanity at the time when he attacked his mother. After a hearing on August 29, 2017, the court granted Gilmore's motion and ordered the appointment of a disinterested psychologist and psychiatrist to evaluate Gilmore's competency to stand trial and sanity at the time of the offense. On November 7, 2017, Gilmore was

---

[2] Ind. Code § 35-42-1-1; Ind. Code § 35-41-5-1.

found not competent to stand trial and committed to Logansport State Hospital. In the summer of 2018, Gilmore regained competency, and the State resumed prosecution. On January 10, 2019, the State amended the charges to add a count for robbery resulting in serious bodily injury as a Level 2 felony. On January 11, 2019, Gilmore pled guilty but mentally ill to robbery resulting in serious bodily injury, and the State dismissed the attempted murder charge.

[6] The court held a sentencing hearing on February 15, 2019. Gilmore's counsel highlighted Gilmore's mental health conditions and noted the psychiatric evaluations in the court's file. Gilmore's sister detailed the trauma and repercussions Gilmore's actions caused the entire family and conveyed Mctier's wish that Gilmore "stay behind bars until she passes away because she is scared of [Gilmore.]" (Tr. Vol. II at 17.) Gilmore's sister also said she "wouldn't want [Gilmore] to be somebody's neighbor right now." (*Id*. at 18.)

[7] The court noted the probation department deemed Gilmore to be a high risk to reoffend. The court noted Gilmore's guilty plea and its awareness of the mental health issues outlined in the evaluations in the court's file. The court also listed Gilmore's prior criminal history, which included convictions for conversion, burglary, criminal mischief, operating a vehicle while intoxicated, criminal trespass, public intoxication, resisting law enforcement, and false informing. Finally, the court also noted the age of Gilmore's mother and the extent of her injuries. The court sentenced Gilmore to a twenty-seven-year executed sentence in the Indiana Department of Correction and ordered Gilmore not to have contact with the victim as a condition of his sentence.

# Discussion and Decision

[8] We "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, [we find] the sentence is inappropriate in light of the nature of the offense and the character of the offender." Ind. R. App. P. 7(B). Our role in reviewing a sentence pursuant to Appellate Rule 7(B) "should be to attempt to leaven the outliers, and [to] identify some guiding principles for trial courts and those charged with improvement of the sentencing statutes, but not to achieve a perceived 'correct' result in each case." *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008). "The defendant bears the burden of persuading this court that his or her sentence is inappropriate." *Kunberger v. State*, 46 N.E.3d 966, 972 (Ind. Ct. App. 2015). "Whether a sentence is inappropriate ultimately turns on the culpability of the defendant, the severity of the crime, the damage done to others, and a myriad of other factors that come to light in a given case." *Thompson v. State*, 5 N.E.3d 383, 391 (Ind. Ct. App. 2014).

[9] A Level 2 felony is punishable by a term of imprisonment between ten years and thirty years. Ind. Code § 35-50-2-4.5. The advisory sentence is seventeen and one-half years. *Id.* Therefore, Gilmore's twenty-seven-year sentence falls within the statutory range for his offense.

[10] In assessing the nature of the offense, we examine "the details and circumstances of the commission of the [offense] and the defendant's participation." *Wright v. State*, 950 N.E.2d 365, 371 (Ind. Ct. App. 2011). Gilmore, a six-foot-two-inch 240-pound man, beat and stabbed his sixty-five-

year-old, five-foot-nine-inch 170-pound mother. He inflicted wounds on his mother's face, arms, and body. She had to be rushed to the emergency room, was placed in intensive care, and required six pints of blood. Gilmore did not call for an ambulance. He left his bleeding mother on the floor for her grandson to find. As a result of Gilmore's actions, Mctier's face is disfigured, her vision has deteriorated, and her jaw required realignment. Gilmore's offense was egregious and merits a long sentence. *See Clark v. State*, 26 N.E.3d 615, 619 (Ind. Ct. App. 2014) (holding forty-five-year sentence for robbery resulting in serious bodily injury was not inappropriate when defendant robbed jewelry store and his co-defendant hit the store clerk several times in the back of the head with a metal pipe during the robbery), *trans. denied*.

[11] We evaluate a defendant's character by looking at his life and conduct. *Wright*, 950 N.E.2d at 371. The pre-sentence investigation report and numerous psychiatric evaluations filed with the court detail Gilmore's mental health issues. He reported having paranoid schizophrenia, bipolar disorder, and post-traumatic stress disorder. Gilmore was hospitalized on previous occasions when he stopped taking his medications. A psychiatrist also diagnosed Gilmore with various substance abuse disorders. However, Gilmore was not experiencing hallucinations when he attacked his mother. He relayed to a psychiatrist that, while attacking his mother, he thought about not wanting to be charged with a crime. Even though Gilmore indicated his mother started the fight, he continued to beat her because he was angry with her. He was also aware that he was going to be arrested when police approached him the day

after the attack.  Thus, Gilmore's mental health issues do not seem to be implicated in his decisions to engage in criminal behavior and inflict serious injury on his mother.  Additionally, Gilmore has a long criminal history including alcohol-related offenses and battery.  Consequently, Gilmore's sentence is not inappropriate in light of his character.  *See id*. at 372 (holding aggregate fifty-year-sentence was appropriate for several reasons, including defendant's extensive and escalating criminal history).

# Conclusion

[12]    While acknowledging Gilmore's mental health issues, we hold his twenty-seven-year executed sentence is not inappropriate given the nature of his offense and his character.  We affirm.

[13]    Affirmed.

Najam, J., and Bailey, J., concur.